**HYDRO CONDUIT CORPORATION,**
Plaintiff-Appellant,

v.

**AMERICAN–FIRST TITLE & TRUST COMPANY,** Hudiburg Investments, Inc., Wood & Sons Paving, Inc., Males Brothers Paving, Inc., and the Ohio Casualty Insurance Company, Defendants-Appellees.

No. 84–2680.

United States Court of Appeals, Tenth Circuit.

Dec. 19, 1986.

Opinion on Rehearing
Jan. 16, 1987.

Terry Guy Shipley, Noble, Okla., for plaintiff-appellant.

Warren L. Griffin, Midwest City, Okla., for defendant-appellee Hudiburg Investments, Inc.

Paul Walters (Cary S. Smith with him on the brief) of Spradling, Alpern, Friot & Gum, Oklahoma City, Okla., for defendant-appellee American-First Title & Trust Co.

Robert Earl Savage (Jack T. Agosta on the brief), Oklahoma City, Okla., for defendants-appellees Wood & Sons Paving, Inc., Males Bros. Paving, Inc., and The Ohio Cas. Ins. Co.

Before McKAY and MOORE, Circuit Judges, and SAM, District Judge *.

McKAY, Circuit Judge.

The undisputed facts establish that defendant Hudiburg Investments, Inc. (Developer) submitted a final plat for a new subdivision to the City of Oklahoma City for approval. The plat contained specifications for improvements, including the installation of sanitary and storm sewers. Pursuant to state law and local regulations, Developer was allowed to post a bond instead of actually completing the improvements provided for in the plat. Accordingly, it executed a bond in favor of Oklahoma City with American-First Title & Trust Co. (American-First Title) as surety. The bond guaranteed completion of the improvements and utilities as well as payment of all bills for contractors, subcontractors, labor and materials incurred in completing the project.

Developer contracted with Wood & Sons Paving (General Contractor) to construct the street and storm sewer for the subdivision. General Contractor executed a performance bond and a labor and material payment bond in favor of Developer with the Ohio Casualty Insurance Co. (Ohio Casualty) as surety. The labor and material bond guaranteed payment by General Contractor to all claimants for labor and materials used to perform its contract.

General Contractor then subcontracted with Males Brothers Paving (Males) to complete a paving plan. (This relationship is unclear, but the parties seem to agree that Males was a subcontractor to General Contractor.) Males, in turn, subcontracted with Lynch Construction, Inc. (Lynch) to provide reinforced concrete pipe as provided in the paving plan. Lynch verbally offered to buy the reinforced pipe from Hydro Conduit Corporation (Hydro Conduit) who accepted by written acknowledgment. Hydro Conduit delivered the pipe to Lynch but never received payment. Lynch was adjudged bankrupt, leaving Hydro Conduit with an unpaid balance of $25,627.43. It sued as a third-party beneficiary under both Developer's bond and General Contractor's bond.

The trial judge granted summary judgment for Developer, General Contractor, and their sureties. The district court found that Developer's bond only covered debts of General Contractor, its immediate subcontractors, and the costs of labor and materials incurred by them. Since Hydro Conduit supplied materials to a subcontractor of a subcontractor of General Contractor, it was not a third-party beneficiary of Developer's bond and could not recover under it. Order, record, vol. 2, at 260–61. The court found that Oklahoma law does not require Developer's bond to cover payment to all remote parties, and even if the bond in issue could be interpreted broadly so as to reach those parties, "it is presumed that the parties intended to execute such a bond as the law required and, the liability of the sureties will be confined to the measure of liability contemplated by the law permitting such bond." *Id.* at 262–63. With respect to General Contractor's bond, the court found that Hydro Conduit fell outside its express terms. *Id.* at 263–64.

Hydro Conduit appeals from the district court decision. The primary issue on this

---

* Honorable David Sam, United States District Judge for the District of Utah, sitting by designation.

appeal is whether Okla.Stat.Ann. tit. 11, § 47–114 (West 1978) requires a bond to secure payment of all construction costs and, if so, whether the coverage of such a bond extends to remote parties.

## I.

■ When a district court has granted summary judgment, the court of appeals applies a de novo standard of review. *Morgan v. Mobil Oil Corp.*, 726 F.2d 1474, 1477 (10th Cir.1984); *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1377 (10th Cir. 1980). This court, therefore, must examine the issues anew.

## II.

■ Oklahoma law permits a local planning commission to require that certain improvements be completed in subdivisions before the commission approves the plat. Okla.Stat.Ann. tit. 11, § 47–114(B) (West 1978). The statute also allows a commission to accept a bond guaranteeing completion instead of requiring actual completion. *Id.*

Developer's bond was intended to comply with statutory requirements and local regulations. Although the language of the bond does not replicate the statute's language, the bond states: "Principal has pursuant to 11 Oklahoma Statutes Annotated, Section 47.114, and the rules and regulations of the City Planning Commission elected to file this bond in lieu of actual completion of improvements and utilities in the above subdivision." Subdivision Bond, record, vol. 2, at 158.

■ The Oklahoma Supreme Court has held that the coverage of a statutory bond

is no greater than that required by law. Clauses which purport to extend coverage beyond the statutory requirements are invalid and mere surplusage. *W.S. Dickey Clay Mfg. Co. v. Ferguson Inv. Co.*, 388 P.2d 300, 304 (Okla.1963) (citing *Lowe v. City of Guthrie*, 4 Okla. 287, 290, 44 P. 198, 200 (1896)). Developer's bond, therefore, covers only what the statute requires and no more. Even if the terms of Developer's bond could be interpreted to cover payment for the cost of materials purchased by remote subcontractors, such an interpretation must be rejected if not contemplated by the statute. Therefore, to determine whether Hydro Conduit may recover under the bond, we must decide whether the statute was intended to protect someone in Hydro Conduit's position.

Section 47–114 provides in pertinent part:
In lieu of the completion of any improvements and utilities prior to the final approval of the plat, the commission may accept an adequate bond satisfactory to the commission, with surety, to secure to the municipality the actual construction and installation of the improvements or utilities at a time and according to specifications fixed by or in accordance with the regulations of the commission, *and further conditioned that the developer will pay for all material and labor entering into the construction of the improvements.*

The italicized words indicate a 1967 amendment to the statute. Act approved May 1, 1967, ch. 200, § 1425, 1967 Okla.Sess.Laws 300. Hydro Conduit argues that this amendment mandates that Developer's bond cover the cost of the pipe supplied. The Oklahoma Supreme Court has interpreted only the preamendment statute;[1] therefore, our interpretation of the amendment is a case of first impression.[2]

---

1. The Oklahoma Supreme Court held that under the preamendment statute, a bond requiring both performance and payment, which was filed pursuant to the statute and city regulations, did not extend to cover payment of a subcontractor's materialman. *Dickey Clay*, 388 P.2d at 304. Because the statute only enabled the local commission to require a performance

bond, the court held the regulation requiring a payment bond invalid. *Id.*

2. Although § 47–114 had already been amended when Developer filed the bond, the Oklahoma City Planning Commission regulations still required only a performance bond. *See* Oklahoma City, Okla. Ordinance tit. 25, § 7100.1(k)

Both the district court opinion and the defendant's brief emphasize that the Commission has a choice under the statute; it can either require completion or accept a subdivision bond. That the Commission has such a choice is not at issue. The question is, once a commission decides to accept a bond, what does the statute require the bond to guarantee? The district court held that a planning commission has two choices under the amended statute: it may accept a bond guaranteeing only completion, or it may accept a bond guaranteeing both completion *and* payment. Order, record, vol. 2 at 262. We must determine whether the statute provides for such a choice or whether it mandates that all bonds must guarantee payment.

■ In the absence of any contrary legislative intent, statutes should be interpreted according to the ordinary meaning of the language. *See, e.g., Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). In this case the statute's meaning is clear. There would be no reason to look to the legislative history, even if such a history existed. We hold that if a commission decides to accept a subdivision bond in lieu of completion of the improvements, the bond not only secures completion but also guarantees payment by the developer for all labor and material used in constructing the improvements.[3]

### III.

American-First Title argues that, even if the statute requires a payment bond, the payment provision does not extend to Hydro Conduit. Rather, the bond obligates

Developer to pay only the debts of General Contractor and its immediate subcontractors. American-First Title reasons that if the legislature had intended the developer to pay all subcontractors and materialmen, section 47–114 would have been more explicit, articulating specifically which labor and material costs the developer must pay.

■ We conclude that the language in section 47–114 is sufficiently clear: "[T]he Commission may accept an adequate bond ... conditioned that the developer will pay for all material and labor entering into the construction of the improvements." "All" is not modified and so means all costs for material and labor, regardless of where they arose in the chain of construction. The Oklahoma Supreme Court has interpreted a similar statute in a similar fashion. The statute

provide[d] that where a contract is made by a public officer of this state for any public project that the person with whom the contract is made shall provide a surety bond, "in a sum not less than the sum total in the contract, conditioned that such contractor or contractors shall pay all indebtedness incurred for labor or material furnished in the construction of said public building or in making said public improvements."

The words "all indebtedness incurred for labor or material furnished" appear quite clear and should need no further interpretation or elaboration as to the legislative intent when the statute was enacted. They are simple and of common usage and have no double meaning and there should be no question but that the surety company under its bond in

---

(1980). The parties acknowledge, however, that if the statute is found to require a payment bond, it controls over the regulations. *See Casualty Reciprocal Exch. v. Sutfin*, 196 Okla. 567, 166 P.2d 434, 438–39 (1945) (commission empowered with effectuating state statute cannot amend or change the statute through regulations).

**3.** Defendant American-First Title argues that the legislature amended the statute to specifically accommodate the problem in *Dickey Clay*. In other words, because the Oklahoma Supreme

Court held that a planning commission was not empowered to require a payment bond, *Dickey Clay*, 388 P.2d at 304, the legislature amended the statute to give commissions the ability to require the additional bond. Even if the legislature had intended only to give planning commissions the option to require a payment bond, in light of the statute's mandatory language, we cannot read it as giving planning commissions a choice. We conclude that payment bonds are statutorily required in all cases in which the bond option is used.

statutory form, and there is no contention that it is not, guarantees the payment of all the costs for labor and material used in the completion of the project. *Standard Accident Ins. Co. v. Basolo,* 180 Okla. 261, 262, 68 P.2d 804, 806 (1937) (interpreting Okla.Stat.Ann. tit. 61, § 1 (West 1931)). In that case, the court held that the statutory bond protected an assignee of a laborer who worked for a subcontractor, although the principal on the bond was the prime contractor. The court did not limit the bond's coverage to first-tier subcontractor costs, as American-First Title would have us do in this case. The statute at issue in the present case is analogous to the one considered in *Basolo* and should be interpreted similarly. It is intended to protect third-party laborers or materialmen. The statute guarantees payment for all labor and material used to complete the project. Therefore, we hold that Hydro Conduit can recover under Developer's bond.

### IV.

■ Oklahoma's established policy of protecting materialmen and laborers working in the public sector supports our holdings. The statutory bond required for public buildings or improvements protects materialmen and laborers, because, unlike in the private sector, they have no recourse against the owner if they are not paid. *American Casualty Co. v. Board of Educ.,* 228 F.Supp. 843, 849 (W.D. Okla. 1964) (interpreting Okla.Stat.Ann. tit. 61, § 1 (West 1963)). In a private construction project, a materialman may file a lien on the project to secure payment. *See* Okla. Stat.Ann. tit. 42, § 141 (West Supp. 1985). But materialmen are prohibited from filing liens against public projects, *New York Casualty Co. v. Wallace & Tiernan,* 174 Okl. 278, 280, 50 P.2d 176, 178 (1935), or against public utilities, *see Pittsburg Equitable Meter Co. v. Cary,* 67 F.2d 65, 68 (10th Cir.1933) (prohibiting a meter company from filing a lien on a corporation for the price of gas meters installed because the meters were part of a distribution system of measuring gas to the public, although the cor-

poration had not yet started to carry out its public function). To protect them, therefore, the courts have interpreted Oklahoma law to require a payment bond that extends to materialmen. *Sherman Mach. & Iron Works v. Iverson Specialty Co.,* 171 Okla. 641, 643, 43 P.2d 1044, 1047 (1935).

The underlying concerns in this case are similar. Although Developer privately owns the subdivision, the improvements made to the subdivision are for the benefit of the municipality. Hydro Conduit provided pipe for the storm and sanitary sewer—a public utility. Thus, Hydro Conduit cannot protect its interest by filing a lien. Its only protection is to recover under a bond. Therefore, we reverse the district court's decision and hold that Hydro Conduit is protected by Developer's bond issued pursuant to section 47–114.

### V.

Hydro Conduit also claims that it is a third-party beneficiary under the labor and material payment bond executed by General Contractor with Ohio Casualty as surety. In light of our above holding, it is unnecessary to reach this contention.

The decision of the district court is REVERSED.

### OPINION ON REHEARING

On petition for rehearing defendants American-First Title & Trust Company and Hudiburg Investments, Inc. point out that we failed to rule on plaintiff's claim that it is a third-party beneficiary under the labor and material payment bond executed by Wood & Sons with Ohio Casualty Insurance Company as surety. The court grants rehearing limited to that issue which we resolve by noting that the district court has considered the parties' arguments, and we agree with its decision. We therefore affirm the district court's holding that plaintiff is not a third-party beneficiary under the general contractor's labor and materials bond.

The petition for rehearing of defendant Hudiburg Investments, Inc. is denied as to all other issues.